The opinion of the Court was delivered by
Withers, J.
One Cave filed a bill in Equity against Lewis Kirkland, and charged, that he (Cave,) under and by virtue of a will, was vested with one-fifth part of certain real and personal property, in trust for Dorcas, the wife of Lewis Kirkland, free from all debts, contracts, <fcc., of her husband: that about 1836 he paid over to Lewis Kirkland and Dorcas his wife, $400 in cash, delivered to them a woman slave, Lucy, estimated to be worth $500, certain cattle worth $120, and other articles of the value of $48 69 — considered as the share of Dorcas under the will— and took no security from them, or fromLewis Kirkland, the latter *337 of whom, however, was well aware of the trust attaching to the property and fund : — That Lewis Kirkland sold Lucy, and with the proceeds and the cash delivered to him purchased a negro, Nimrod, and other property, taking a title to himself, and a negro named Cumba, the title to whom he took in the name of the complainant: — That Dorcas had died and had left the trust estate above described distributable, under the Act of 1791, among Lewis, her husband, and certain children : — He prayed process against Lewis and the children, and to the end that the rights of the several parties might be secured, “that the said Lewis Kirkland may be enjoined from disposing of any of the trust property, or of the property purchased with the trust fund; and that he may account for any deficiency or loss incurred by his mismanagement or interference tvith the said trust property.” To such end he prayed a writ of injunction to be directed to Lewis Kirkland; and stvore to the bill on the 2d May, 1849. On that day Mr. Commissioner Aldrich ordered the writ of injunction, and “ that the said Lewis Kirkland do give bond and good security, in the penal sum of one thousand three hundred dollars, conditioned for the forthcoming of the cattle and the slaves, Nimrod and Cumba, named in the bill, to be subject to the final order of the Court, in the premises, and also conditioned, that he, the said Lewis Kirkland, shall abide by and perform such orders and decrees as the Court shall make, in the premises
Lewis Kirkland, being tardy in responding to the command of the writ of injunction, was required, under notice of the 5th May, to obey the process, on or before the 7th, or that an attachment issue.
On the 11th May, Lewis Kirkland,together with this defendant, William, executed a bond, to A. P. Aldrich, Commissioner, in the penal sum of $> 1,300, conditioned as follows:
“ That if the above named Lewis Kirkland, his heirs, executors and administrators, shall and do well and truly cause certain property, to wit, twenty head of cattle, and two slaves, named Nimrod and Cumba, to be forthcoming, to be subject to the final *338 order of the Court of Equity in a certain cause of Mathew J. Cave, trustee vs. Lewis Kirkland and others, bill filed the 5th May, 1849 ; and if the above bound Lewis shall abide by and perform such orders and decrees as the said Court shall make in the said cause, without fraud,” &c.
The Commissioner made a report at February term, 1851, and accompanied the same with the statement of a money account between Lewis Kirkland and Mathew J. Cave, trustee, wherein Lewis Kirkland is charged as of February, 1836, (besides the interest account,) with the value of Lucy, $500; cash paid to him, $400; value of cattle, $120 ; equal to $1,020 : — value of Nimrod and interest from 20th April, 1849, $449, — credited by amount of the sale of the cattle, $93 15, which had been received by the trustee ; and after deducting the share of Lewis Kirkland, being one-third, the balance due to the trustee was stated at $959 53.
A Chancellor confirmed the report in February, 1851, and made it the judgment of the Coitrt: He ordered, further, that Lewis Kirkland pay to the trustee the balance found due. “ It is further ordered,” (said the decretal order,) “that unless the said Lewis Kirkland do, by the 5th day of March next, fulfil the conditions of the bond given by him in this cause, and dated the 11th May, 1849, the Commissioner do put the said bond in suit.”
Upon the bond the action, which has given rise to the present appeal, was instituted against ffm. Kirkland, surety. What the pleadings were we know not; it may not be material that we should. It appears, from the Circuit report, that no order for the delivery of the property specified in the bond, (to wit,. Nimrod, Cumba, and twenty head of cattle,) was ever made byr the Court of Equity. The cattle (it would appear) had been delivered — at any rate, Lewis Kirkland was charged with $120 and credited with $93 15 on that item. He was charged with all the money he received in 1836, a part of which, the bill stated, was laid out for the purchase of Cumba, in the trustee’s: name, and a part for Nimrod. He was charged with the price. *339 of Lucy, a portion of the trust property, (alleged to have been sold by him,) at $500.
On the Circuit the account stated by the Commissioner and confirmed by the Court of Equity, was made the measure of damages, against this defendant, a surety. It was held “ that the condition was sufficiently comprehensive to cover any order the Court might make in the case.”
This ruling is resisted, upon motion for non-suit, or new trial, (as we are to infer it was on Circuit,) upon the grounds, that the Commissioner had no power to order a bond, or to take one, conditioned that a party shall abide by and perform a decree generally: that in any event the surety’s obligation does not arise if the principal (the defendant in Equity) is within the jurisdiction and accessible to an attachment: that, however valid this bond, the surety is liable only, on a proper construction of it. for the forthcoming of the specific property specified in it, and for which it was taken as security: that, the decretal order, however it might operate on Lewis Kirkland, is not conclusive on this defendant, and that it was incumbent on the plaintiff, upon pain of non-suit or defeat before the jury, to show, from other evidence, damages sustained by a breach of the bond, such as should affect the surety. We conceive such to be the import, though not the language, of the grounds of appeal urged here.
There are several observations which have suggested themselves, upon the face of the proceedings in Equity, which have been spread before this Court.
The order was to abide by and perform such orders and decrees as the Court shall make in the premises: the bond expressed it, “such orders and decrees as the said Court shall make in the cause." The “ premises ” of the order were, the forthcoming of the cattle, of Nimrod and Cunaba : the orders and decrees sought in the “ cause" and rendered too, embraced a wider range. A general account was made and affirmed. The decretal order directed suit on the bond if Lewis Kirkland did not “fulfil the conditions” of it by a day certain.
*340 The force and effect of such, and such like observations, in a law Court, are preceded by the inquiry, how far can we look into the proceedings in a cause in Equity, for the purpose of measuring or qualifying the liability of a party to a bond, sued in our Courts ? The case in the Court of Equity is referred to in the bond, eo nomine : the condition looked to the forthcoming of the specific property, three items, to abide the final order in that cause; a sweeping clause followed, imposing the obligation to perform any order and decree that might be made in the case.
We hesitate to enter upon the undertaking of exploring and adjudging the limits of the power that pertains to Equity; or to speak authoritatively of its practice. It should seem, however, that we must entertain an inquiry, on a case that presents it, whether a special power granted by statute, has been exceeded, or used to work duress upon an obligor brought into our Courts. By the Act of 1840, sec. 8, (11 Stat. 110, 111,) a Commissioner in Equity has power to grant injunctions, both special and common, conformably to the rules and practice of the Court. It seems unnecessary to travel backwards through various other legislation, as to the power of Commissioners in this behalf.
The injunction in this case was a special injunction. It was provisional, or interlocutory. The English definition of it (as we gather from Daniel’s Ch. PL and Prac.) is, that it is a writ granted upon special grounds arising out of the circumstances of the case; we learn from the same source, that by means of this process the Court will interfere to restrain the transfer of stock, or the receipt of bank annuities, or the sale of specific chattels— “ when it is necessary to protect the enjoyment of specific chattéls which cannot be the subject of compensation in damages— that, “what will be considered a breach of a special injunction, must depend entirely upon the form of the injunction and the nature of the act to be prohibited” — (3 Daniel, 1907) — “ that where a party has been guilty of a contempt by the breach of an injunction, the proper course of proceeding is to obtain an order *341 for his committal,” (on motion, and upon notice served upon him personally.) — lb. 1909.
We know from the Equity reports of our own State, that restraints upon the alienation, or eloigning or wasteful disposition of chattels, especially negroes, by means of special injunctions, is conformable “to the rules and practice of the Court” of Equity. So the Legislature, no doubt, vested, in 1840, the Commissioners with power to put upon Lewis Kirkland the restraint which sought the forthcoming of the cattle, and the two negroes, and to that end to exact a bond with surety. Nor shall we inquire whether, as to him, their suitor, the Court of Equity could not do all that was done, or more. We waive, too, the question, whether the sweeping clause “that he should abide by and perform such orders and decrees as the said Court shall make in the said caused be void — as exceeding the purpose and range of a special injunction ; or as obtained by duress — in consideration that the order demanded a bond to secure compliance with a decree “in the premises,” to wit, for the forthcoming of three items of property to abide the decree, whereas when the party was arrested a bond was exacted not only for that, but also to abide all orders and decrees in the cause.
We shall consider rather what it means, for the purposes of the present motion, in an action against the defendant.
A like clause is inserted in practice here where a bond, with surety, is executed in discharge of one in custody under a writ of ne exeat, though in the English practice (vide Daniel, p. 1942) the writ commands the party “ to give sufficient bail or security (in a sum certain) that he will not go, or attempt to go, &c., without leave of our said Court” — and, in default, he is committed to prison. However, to give security to answer the decree, is regarded as matter in ease of one captured by a writ of ne exeat, “ a proceeding of extreme rigor,” (says Harper, J., in Commissioners vs. Philips, 2 Hill, 634). In such a case a party is regarded as having given bail, and in that case *342 his sureties escaped liability, having surrendered the principal under an order of a law Judge.
Such a clause as we are considering, in a bond taken under a writ of special injunction, we are not prepared to construe as imposing an absolute liability to pay a money decree — as if an absolute guaranty — with no reference to the “ premises,”— with no redress for a surety, such as bail have at law, while we see that such language in a bond under writ of ne exeat, does allow sureties the resort of bail, and is regarded as equitable bail. How far any existing doubt might yield to a judicial interpretation of it by the Court of Equity, we need not say.
It follows from this, that the defendant had a right to raise the question, whether Lewis Kirkland had failed to “fulfil the conditions of the bond” so as to implicate the defendant, his surety, until it appeared that he was in default, in that Nimrod and Cumba were not forthcoming, the cattle having been produced : whether in fact there was a breach, and what breach, involving how much damage, of the obligation this defendant assumed in the bond.
It is not an answer to say, it was res judicata. This defendant was no party in Equity. Whether he might have been made so, it is not for us to say. The decree was not the foundation of the action. It was but evidence. Surely a final decree may bind a party in Equity to an extent far beyond the liability of a surety on a bond arising upon a provisional, or sort of interlocutory proceeding. Yet on the circuit the bond was adjudged to be comprehensive enough to cover any decree the Court of Equity might make in the case. In general, it is not agreeable to judicial views to hold one concluded who is no party to proceedings, though becoming interested collaterally, who could not be heard in shaping a judgment which is to be produced against him as evidence: nor is this less the case when it is considered, that his principal may make no defence, from indifference it may be: or by reason of unfair combination with an adversary.
In the case before us we see that money is charged which is *343 alleged by the real plaintiff here to have been laid out in Cunaba, the title to whom is taken in his name. We know not what has become of her. Suppose the trustee recovers the value of Cunaba, and may hereafter recover the negro likewise : or if the decree has taken a course that operates the vesting of Cumba in Lewis Kirkland, and she has been, or may be, sold for his existing judgment debts, and thus lost to the surety, though possibly recoverable by the trustee if not barred by laches, may not these or similar conjectures, be matter of inquiry on the points of breach and damages before the jury, in behalf of the surety ? The value of Nimrod is also charged, as well as the money alleged to have been vested in him; but we are told at the Bar that a correction of that error has been made in the Court of Equity.
It will thus be seen that there was error enough on Circuit to take the case before another jury: and if sundry matters have been touched and not ruled authoritatively, it is because we fear to trench on the domain of Equity; and, at all events, if we must decide any thing touching the doctrines or practice of that jurisdiction, this Court would wait for the chance of any light from that quarter to guide us.
It is ordered, that the motion for a new trial be granted.
Wardlaw, Frost, Whitner and Glover, J'J., concurred.
O’Neall, J., absent.-

Motion granted.